NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                 :
FRANKLIN C. SMITH, on behalf of  :     Hon. Joseph H. Rodriguez
himself and all others similarly situated, :
                                 :
          Plaintiff,             :     Civil Action No. 07-5139
                                 :
     v.                          :
                                 :     OPINION
LYONS, DOUGHTY & VELDHUIUS,      :
P.C., et al.,                    :
                                 :
          Defendants.            :
_____ :

RODRIGUEZ, Senior District Judge:

Plaintiff Franklin Smith ("Plaintiff" or "Smith") brought this action to remedy

alleged violations of the Fair Debt Collection Practices Act ("the FDCPA" or "the Act"),

15 U.S.C. § 1692, *et seq.*  Presently before the Court is Defendant Lyons, Doughty, &

Veldhuius's ("Lyons") motion to dismiss in part the Complaint for failure to state a claim.

For the following reasons, the Court will grant in part and deny in part Lyons' motion.

## I. BACKGROUND

On June 6, 2007, a debt collection agency called Credigy Receivables, Inc.

("Credigy") contacted Smith in an attempt to collect an outstanding debt.  (Compl. ¶ 14.)

The same day, Smith's attorney sent Credigy a letter ("the June 6 letter") informing it that

Plaintiff had retained counsel, and that it should refrain from directly communicating with

Smith in the future.  (*Id.* ¶ 15; *see* Compl., Exh. A.)

On August 22, Credigy referred Smith's delinquent account to Lyons, which is also a debt collection agency.  (*Id.* ¶ 16.)  The same day, Lyons mailed a letter ("the August 22 letter") directly to Smith in an attempt to collect the outstanding debt.[1]  (*Id.* ¶ 17; *see* Compl., Exh. B.)  Less than a week later, on August 28, Smith's counsel notified

---

[1]The August 22 letter reads, in relevant part:

Dear Mr. Smith:

Please be advised that this office represents Credigy Receivables Inc. assignee of First Select, Inc. in connection with your account.

We have been advised that your account is currently in default.  Due to your default in payments, Credigy Receivables Inc. assignee of First Selection, Inc. has elected to accelerate the entire unpaid balance on your account.

Please accept this letter as Credigy Receivables Inc. assignee of First Selection, Inc.'s request for payment in the amount of $5,740.55 plus unpaid accrued interest, which is $5,028.90.

If you have any questions concerning this matter or if you wish to arrange for payment, I suggest you contact our claims adjuster at extension 8.

Very truly yours,

David R. Lyons

IMPORTANT NOTICE CONCERNING YOUR RIGHTS

UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER THE RECEIPT OF THIS LETTER THAT THE VALIDITY OF THIS DEBT, OR ANY PORTION OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID.  IF YOU DO NOTIFY US OF A DISPUTE WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU.  ALSO, UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.  THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(Compl., Exh. B.)

Lyons in writing that he represented Plaintiff in this matter.  (Compl*.*, ¶ 19; *see* Compl., Exh. C.)  Plaintiff's attorney also alerted Lyons to the June 6 letter, which instructed Credigy to cease all direct contact with Smith.  (*See* Compl., Exh. C.)  After asserting that the August 22 letter violated the FDCPA, counsel informed Lyons that Plaintiff disputed the debt and demanded its verification.  (*See id*.)  On October 4, Smith's counsel received a written response ("the October 4 letter") from Lyons, attached to which was a debt verification statement dated August 30, 2007 ("the August 30 verification").  (Compl., ¶ 20; *see* Compl., Exh. D.)

Plaintiff filed this suit on October 24, 2008, seeking damages, and declaratory and injunctive relief.[2]  (Compl., ¶ 1.)  Significantly, the case is styled as a "nationwide class action," and is brought on behalf of "all consumers and their successors in interest . . . who have received debt collection letters and/or notices from the Defendants which are in violation of the FDCPA . . . ."  (*Id.* ¶ 11.)

The Complaint contains seven counts, each alleging a separate violation of the Act. Count I alleges that Lyons violated § 1692c(a)(2) by mailing the August 22 letter directly to Smith when Lyons knew or should have known that Smith was represented by counsel. Count II avers that Lyons violated § 1692c(c) by communicating directly with Smith after Plaintiff's counsel told Credigy in the June 6 letter to cease such communications.  In

---

[2]Initially, Plaintiff named both Lyons and Credigy as Defendants, but Smith subsequently resolved his claims against Credigy.  (*See* Docket Item No. 9.)  As a result, Credigy is no longer a party to this action.

Counts III and IV, Plaintiff claims that Lyons violated §§ 1692g(a)(1) and 1692e(10) respectively by not stating in the August 22 letter the amount of Smith's debt.  In Count V, Plaintiff claims that the August 22 letter violated § 1692g(a)(3) by failing to explicitly identify Lyons as the entity which would assume the debt to be valid.  Count VI alleges that the October 4 letter violated § 1692g(a)(5) of the Act by failing to provide the address of the original creditor.  Finally, according to Count VII, Lyons violated § 1692e(11) by failing to state in the October 4 letter that it was attempting to collect a debt.

Lyons now moves to partially dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  It contends that Counts I and II should be dismissed to the extent they seek class action relief because the claims raised in those Counts are inappropriate for class treatment.  It further argues that Counts III through VII should be dismissed in their entirety because the August 22 and October 4 letters, the contents of which form the basis for those Counts, do not violate the FDCPA as a matter of law.  Finally, Lyons asserts that Smith's demands for injunctive or declaratory relief must be dismissed because neither form of relief is available in a private action brought under the FDCPA.

Smith submitted his opposition papers on December 20, 2007.  He maintains that the Complaint pleads viable claims for FDCPA violations, and that Counts I and II are appropriate for class treatment.  However, he consents to the dismissal of Count VI,[3]

---

[3]As a result, Count VI will be dismissed without further comment or analysis by the Court.

-4-

(Smith's Br., p. 13,) and does not oppose dismissal of his demands for equitable relief. (Lyons' Reply Br., p. 1.)

## II. DISCUSSION

### A. Standard on a Motion to Dismiss for Failure to State a Claim

A Complaint will be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. FED. R. CIV. P. 12(b)(6); *see In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). "While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact)." *Id*. at 1965 (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the Complaint, matters of public record, orders, and exhibits attached to the Complaint, are taken into consideration. *Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff. *Id*.

-5-

However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a Complaint when deciding a motion to dismiss.").

It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007). Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

## B.  FDCPA Statutory Overview

The FDCPA was enacted in 1977 to curb "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At the time the Act was being considered, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* In addition to "eliminat[ing] abusive debt collection practices by debt collectors," the FDCPA was designed "to insure that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e).

To help protect consumers' rights, the Act creates a private cause of action against debt collectors who violate its provisions. *See id.* § 1692k.  When such a suit is filed, courts within this Circuit evaluate collection letters and notices for compliance with the Act "from the perspective of the 'least sophisticated debtor.'"  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)).  This standard "requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown v. Card Service Center*, 464 F.3d 450, 454 (3d Cir. 2006).

The least sophisticated debtor standard comports with a basic purpose of the FDCPA: "to protect 'all consumers, the gullible as well as the shrewd,' 'the trusting as well as the suspicious,' from abusive debt collection practices." *Id.* (citation omitted in original).  Nonetheless, the standard "'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Wilson*, 225 F.3d at 354-55).  Importantly, whether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion.  *See Wilson*, 225 F.3d at 353 n.2; *see also Galuska v. Collectors*

-7-

*Training Inst. of Ill., Inc.*, No. 3:07-CV-2044, 2008 U.S. Dist. LEXIS 39508, at *8 (M.D.

Pa. May 13, 2008) ("Whether a communication is misleading under the FDCPA presents

a question of law for the court; disputed facts must be resolved by a jury.").

<u>C.  Analysis of Lyons' Motion</u>

*1.  Counts I & II–Violations of §§ 1692c(a)(2)
and 1692c(c)–Class Action Claims Only*

Section 1692c(a)(2) of the Act prohibits a debt collector from communicating

directly with a consumer

> if the debt collector knows the consumer is represented by an
> attorney with respect to such debt and has knowledge of, or can
> readily ascertain, such attorney's name and address, unless the
> attorney fails to respond within a reasonable period of time to a
> communication from the debt collector or unless the attorney
> consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2).  According to Count I, Lyons violated this provision by mailing

Smith the August 22 letter when Lyons knew or could reasonably have ascertained that

Plaintiff was represented by counsel based on the June 6 letter that counsel sent to

Credigy.  (Compl. ¶ 25.)

Subject to limited exceptions, § 1692c(c) of the Act prohibits a debt collector from

communicating with a consumer if he notifies the debt collector in writing "that the

consumer refuses to pay a debt or that the consumer wishes the debt collector to cease

further communication with the consumer . . . ."  15 U.S.C. § 1692c(c).  Count II asserts

that the August 22 letter violated this provision as well because the June 6 letter that

counsel sent to Credigy instructed it to "immediately Cease and Desist all direct

-8-

communication" with Smith.  (Compl. ¶ 31.)

Lyons does not challenge the legal or pleading sufficiency of Counts I and II insofar as the allegations therein pertain to Smith individually.  Instead, it moves for dismissal of those Counts to the extent they seek class action relief.  In essence, Lyons maintains that the claims in Counts I and II are too individualized to lend themselves to class action treatment.  The Court agrees.

Normally, courts refrain from analyzing the propriety of a proposed class with respect to a given claim until the plaintiff moves for class certification under Federal Rule 23.  There are, however, "rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003).  In such situations, courts will strike or dismiss class allegations even if discovery has not yet taken place.  *See id.*  This case presents such a situation.

Rule 23 requires class action plaintiffs to satisfy several elements in order to achieve class certification.  Depending on the type of class action at issue, one of these elements involves demonstrating that common questions of law or fact will predominate over questions affecting only individual class members.[4]  FED. R. CIV. P. 23(b)(3).  This inquiry "focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication."  *Cannon v.*

---

[4]The parties appear to agree that this case is maintainable as a class action, if at all, under Rule 23(b)(3).  (*See* Lyons' Br., p. 22; Pl. Br., p. 15; *see also* Compl. ¶ 13.)

*Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999) (citation omitted).  It also requires that class claims can be proven by reference to generalized proof.  *See, e.g.*, *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 120 (D.N.J. 2002).

In this case, Plaintiff proposes a class consisting of "all consumers and their successors in interest . . . who have received debt collection letters and/or notices from the Defendants which are in violation of the FDCPA . . . ."  (Compl. ¶ 11.)  It appears from the face of the Complaint that this class cannot satisfy the predominance requirement as to Counts I and II.

Adjudication of the claims in Count I will likely turn on an individualized assessment of: 1) whether and when Lyons knew a particular consumer was represented by an attorney and 2) whether Lyons directly communicated with the consumer even after having learned of the representation.  Resolving the claims in Count II will similarly turn on a case-by-case analysis of: 1) whether and when a particular consumer informed Lyons in writing that he did not wish further communication from Lyons and 2) whether Lyons persisted in communicating with the consumer in any event.  It is highly improbable that these issues can be resolved using class-wide proof.  As such, individual questions will predominate, which precludes class treatment.

Plaintiff offers two arguments against dismissal of his class allegations with respect to Counts I and II.  First, he speculates that Lyons could have had a policy or practice of communicating with consumers in violation of §§ 1692c(a)(2) and 1692c(c), thereby rendering class treatment appropriate.  (Pl. Br., pp. 15-16.)  But no allegation to

-10-

that effect appears in the Complaint; Plaintiff raises it for the first time in his opposition brief. Courts cannot consider allegations raised under such circumstances on a motion to dismiss pursuant to Rule 12(b)(6). *See Town of Secaucus v. United States Dep't of Transp.*, 889 F. Supp. 779, 791 (D.N.J. 1995) ("On a 12(b)(6) motion, the district court is limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum.").

Smith's second argument dovetails into his first; he asserts that dismissal of the class claims in Counts I and II is premature because he has not yet had discovery, which he surmises will reveal facts indicating the propriety of class action treatment. (Pl. Br., pp. 14-16.) This argument misses a substantial point about pleading requirements and the purpose of discovery. To state a viable claim, a plaintiff must make factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965 (internal citations omitted). The purpose of discovery is to uncover evidence of the facts pleaded in the Complaint, *see id.* at 1965, not "to find a cause of action," *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). Presently, the Complaint alleges no facts suggesting that Lyons had a policy or practice of communicating with consumers it knew to be represented by counsel or who wished not to receive such communications. Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded.

For these reasons, Counts I and II are dismissed insofar as they purport to state

class action claims.  The Court will, however, grant Plaintiff leave to amend the Complaint by pleading facts supporting his policy or practice theory within 20 days.  If Smith is not presently in a position to plead such facts, he must proceed with Counts I and II on an individual basis.  Should he subsequently uncover appropriate factual support for class allegations relating to Counts I or II, he may at that point seek the Court's leave to file an Amended Complaint.

## 2.  Count III–Violation of § 1692g(a)(1)

In Count III, Smith asserts that Lyons violated the FDCPA by not stating the amount of the debt in the August 22 letter.  (Compl., ¶ 36.)  This claim is premised on § 1692g(a)(1) of the Act, which requires debt collectors to state "the amount of the debt" in the initial communication with the consumer, or in a supplemental statement sent within five days of the initial communication.  15 U.S.C. § 1692g(a)(1).

In this case, the August 22 letter requested payment "in the amount of $5,740.55 plus unpaid accrued interest, which is $5,028.90."  (Compl., Exh. B.)  Lyons contends this satisfies § 1692g(a)(1) as a matter of law.  Smith, however, argues that he states a claim for a violation of § 1692g(a)(1) because the letter does not identify the date as of which the unpaid accrued interest was calculated, and does not specify whether interest will continue to accrue on the unpaid principal balance.  As discussed below, the Court agrees with Smith.

In *Dragon v. I.C. System, Inc.*, 483 F. Supp. 2d 198 (D. Conn. 2007), the court determined that the defendant debt collector violated, *inter alia*, § 1692g(a)(1) by failing

-12-

to provide certain information with respect to interest that had accrued on the plaintiff's outstanding debt.  The defendant had sent the plaintiff a letter which stated, "Principal Owed: $136.64; BALANCE DUE: $136.64."  *Id.* at 202.  But the letter did not identify the date as of which payment of the stated balance would suffice to pay the debt in full. *Id.*  Likewise, the letter failed to acknowledge that the amount necessary to fully pay the debt could vary as a result of continually accruing interest, and other fees and charges.  *Id.* at 203.  According to the court, this was potentially misleading, and therefore violated § 1692g(a)(1), because the least sophisticated debtor "could readily conclude that the total amount stated as due ($136.64) was due *at any time*, when in fact it was not and was subject to adjustment by [the creditor] on a periodic basis."  *Id.* (emphasis in original).

This case is similar to *Dragon* in that the August 22 letter failed to indicate the date as of which the stated interest had been calculated, and also failed to disclose that interest would continue to accrue on unpaid principal.[5]  The Court agrees with the *Dragon* court's reasoning that these omissions could confuse the lease sophisticated debtor.  This hypothetical person, who is both gullible and naive, *see Brown*, 464 F.3d at 454, might believe that he could pay his debt in full by remitting the sum of the principal and interest stated in the August 22 letter at any time after he received that letter.  Such a belief would be incorrect because the total amount of the debt was and is subject to periodic

---

[5]*See*, *supra*, note 1.

adjustment by Credigy.[6]  Count III therefore states a claim for a violation of §

1692g(a)(1).[7]

### 3.  Count IV–Violation of § 1692e(10)

Section 1692e(10) of the Act prohibits debt collectors from using "any false

representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer."  15 U.S.C. § 1692e(10).  Plaintiff alleges that Lyons

violated this provision by intentionally not stating the amount of the debt in the August 22

letter.  (Compl. ¶ 41.)  Lyons, however, asserts that the letter was not deceptive as a

matter of law.  The Court disagrees.

Under least sophisticated debtor standard, "a collection letter 'is deceptive when it

can be reasonably read to have two or more different meanings, one of which is

inaccurate.'"  *Wilson*, 225 F.3d at 354 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35

(2d Cir. 1996).  Here, the August 22 letter did not state the date on which the outstanding

interest amount was calculated, and did not explain that interest would continue to accrue

on unpaid principal.  The least sophisticated debtor could have read the letter to mean that

interest was calculated on the date the letter was written.  Or, as noted in section II.C.2.,

_____

[6]Indeed, the August 30 verification, which was attached to the October 4 letter, identified the interest due as $5,050.28.  (*See* Compl., Exh. D.)  This is $21.38 more than was reflected in the August 22 letter, the result of interest that had accrued in the interim period.

[7]Smith also contends that Lyons violated § 1692g(a)(1) by failing to specifically state in August 22 letter the total amount due.  According to Plaintiff, it is insufficient that Lyons provided the principal and interest balances as separate line items.  This argument need not be addressed because the Court has already determined that Smith states a claim in Count III.

-14-

*supra*, he could have incorrectly believed that the stated interest balance was static, and that payment of that amount, plus the principal balance, would satisfy the debt in full irrespective of when the payment was made.  For this reason, Smith has stated a claim for a violation of § 1692e(10).  *See Dragon*, 483 F. Supp. 2d at 201-03 (holding that the debt collector violated § 1692e(10), in addition to § 1692g(a)(1), by failing to identify the date as of which the stated account balance was current and by failing to acknowledge that this balance would be periodically adjusted to reflect accrued interest).

### 4.  *Count V–Violation of § 1692g(a)(3)*

Section 1692g(a)(3) obligates a debt collector to send the consumer a written notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector[.]"  15 U.S.C. § 1692g(a)(3).  Here, the August 22 letter contained the following validation notice: "UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER THE RECEIPT OF THIS LETTER THAT THE VALIDITY OF THIS DEBT OR ANY PORTION OF IT, IS DISPUTED, *WE* WILL ASSUME THAT THE DEBT IS VALID."  (Compl., Exh. B.) (emphasis added).  The crux of Count V is that Lyons' use of the word "we" would confuse the least sophisticated debtor as to which entity–Lyons or Credigy–would assume the debt to be valid.  Significantly, Smith provides no authority in support of this assertion.  In any event, Count V fails as a matter of law because, although the least sophisticated debtor standard protects naive and gullible consumers, it "'preserv[es] a quotient of reasonableness and presum[es] a basic

-15-

level of understanding and willingness to read with care.'"  *Brown*, 464 F.3d at 454

(quoting *Wilson*, 225 F.3d at 354-55).  Reading the August 22 letter carefully, even the

least sophisticated debtor could deduce that the word "we" refers only to Lyons.

The August 22 letter was printed on Lyons' letterhead, and was signed only by

Lyons' principal officer.  Thus, Lyons is clearly its author.  This is important because

Lyons wrote in the letter that it represented Credigy, which it repeatedly identifies by

name.  It is highly doubtful that the least sophisticated debtor would interpret "we" to

mean both Lyons and Credigy, or just Credigy, when Credigy is specifically named as a

separate and distinct entity from the author of the letter.  Moreover, the letter frequently

employs the term "we," and words of similar import, throughout its body.[8]  On each

occasion, these terms clearly refer to Lyons.  There is no reason why the least

sophisticated debtor would understand that "we" refers to Lyons in the letter's main body,

but would be confused as to its meaning in the validation notice.  Smith's reading of the

validation notice is precisely the kind of "'bizarre or idiosyncratic interpretation[ ]'" for

which the least sophisticated debtor standard prevents liability.  *Brown*, 464 F.3d at 454

(quoting *Wilson*, 225 F.3d at 354-55).  Accordingly, Count V is dismissed.

### 4.  *Count VII–Violation of § 1692e(11)*

Section 1692e(11) of the Act makes unlawful

> The failure to disclose in the initial written communication with
> the consumer . . . that the debt collector is attempting to collect

---

[8]*See*, *supra*, note 1.

> a debt and that any information obtained will be used for that
> purpose, and the failure to disclose in subsequent
> communications that the communication is from a debt
> collector. . . .

15 U.S.C. § 1692e(11).  According to Count VII, Lyons violated this provision by failing

to state in its October 4 letter that it was attempting to collect a debt and that any

information it obtained would be used for that purpose.  (Compl. ¶ 57.)  Lyons argues that

it had no obligation under § 1692e(11) to include a statement to that effect in the October

4 letter.  According to Lyons, such statements are required only in initial communications,

not in subsequent letters such as the October 4 letter.  Lyons is correct.

Section 1692e(11) creates two separate disclosure requirements, one for initial

communications and another for subsequent communications.  In the initial

communication, the debt collector must state that it is attempting to collect a debt and that

information obtained will be used for that purpose.  In subsequent communications, the

debt collector must disclose only that the communication is from a debt collector–there is

no language in § 1692e(11) requiring the debt collector, in subsequent communications,

to repeat the disclosures required for initial communications.  *See Lewis v. ACB Bus.*

*Servs.*, 135 F.3d 389, 400 n.9 (6th Cir. 1998) ("[I]n subsequent communications with the

consumer the debt collector need *only* state that the communication is from a debt

collector.") (emphasis added); *Schwarm v. Craighead*, No. 05-01304 WBS GGH, 2008

U.S. Dist. LEXIS 36622, at * 60 n.18 (E.D. Cal. May 5, 2008) (noting that § 1692e(11)

"limit[s] the requisite disclosure for subsequent communications to include *only* that the

communication is from a debt collector") (emphasis added).

The history of § 1692e(11) supports this interpretation.  The current version of § 1692e(11) was enacted in 1996.  Before that, the provision obligated a debt collector "to disclose clearly *in all communications* . . . that [it] is attempting to collect a debt and that any information obtained will be used for that purpose."  15 U.S.C. § 1692e(11) (amended 1996) (emphasis added); *see also Dutton v Wolpoff & Abramson*, 5 F.3d 649, 653-57 (3d Cir. 1993) (construing the pre-1996 version of § 1692e(11) to require debt collectors to include within subsequent communications a statement that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose).  Had Congress wished to preserve the pre-1996 disclosure regime, it would not have amended the provision.

Because § 1692e(11) does not require a debt collector to repeat the initial communication disclosures in subsequent communications, Lyons' failure to do so in the October 4 letter does not violate the Act.  Accordingly, Count VII is dismissed.

### 6. *Demand for Injunctive and Declaratory Relief*

As noted, Plaintiff seeks relief in the form of damages, and injunctive and declaratory relief.  Lyons, however, contends that equitable relief is not available in private actions brought under the FDCPA.  It therefore seeks dismissal of Smith's demands for such relief.  Smith appears not to oppose this aspect of Lyons' motion.  (*See* Lyons' Reply Br., p. 1.)  Given this development, and the case law discussed below, the demands for declaratory and injunctive relief are dismissed.

Again, the FDCPA creates a private cause of action against debt collectors who fail to comply with its provisions. *See* 15 U.S.C. § 1692k. Section 1692k of the Act indicates that money damages are available to a successful plaintiff, *see id.* 1692k(a), but there is no provision for equitable relief in private actions. This absence of statutory authorization led the Third Circuit to conclude that declaratory and injunctive relief is unavailable in cases brought under § 1692k. *See Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004). Plaintiff's demands for equitable relief therefore are dismissed.

### III.  CONCLUSION

For the foregoing reasons, Lyons' motion to dismiss in part the Complaint is granted in part and denied in part. Counts I and II are dismissed insofar as they purport to state class action claims. As discussed above, Smith is granted leave of the Court to remedy the defective class action allegations within 20 days. Counts V through VII are dismissed in their entirety and with prejudice. Smith's demands for equitable relief are likewise dismissed with prejudice. In Counts III and IV, Plaintiff has stated viable claims for violations of the FDCPA. Accordingly, those Counts will remain in their entirety.



/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge

Dated: July 22, 2008